51 F.3d 1531
 Richard ALBRIGHT, Plaintiff-Appellee,
v.
M. RODRIGUEZ, U.S. Border Patrol Agent; Sierra County, New
Mexico Board of County Commissioners; Ron Brown, Sheriff;
Marcel La France; New Mexico Department of Public Safety
(NM State Police), doing business as NM State Police; New
Mexico State Police Officer Massengale, Officer; Robert
Atwood; Greg Silvey; Stoops, Doctor; Ron Lopez; Edmund
Kase, Judge; Adam Monsibaiz, Defendant,
and
Rudy Carey, Sergeant, Defendant-Appellant.
 No. 94-2108.
 United States Court of Appeals,
Tenth Circuit.
 April 7, 1995.
 
 Philip B. Davis, Albuquerque, NM, for plaintiff-appellee.
 Michelle Lalley Blake (Norman F. Weiss with her on the brief), of Simone, Roberts & Weiss, P.A., Albuquerque, NM, for defendant-appellant. Manuel I. Arrieta, of Weinbrenner, Richards, Paulowsky & Ramirez, P.A., Las Cruces, NM, on the opening brief for defendant-appellant.
 Before BALDOCK and BRORBY, Circuit Judges, and BROWN, District Judge.*
 BALDOCK, Circuit Judge.
 
 
 1
 Defendant Rudy Carey appeals the district court's denial of his motion for summary judgment in Plaintiff Richard Albright's 42 U.S.C. Sec. 1983 action. We exercise jurisdiction under 28 U.S.C. Sec. 1291, see Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985), and reverse.
 
 I.
 
 2
 On March 21, 1992, Dennis Zumwalt, his son, and Plaintiff were traveling north on Interstate 25 in a Ford van. Zumwalt, who was driving, stopped at the border patrol checkpoint near Truth or Consequences, New Mexico. Border Patrol Agent Adam Monsibaiz approached the van to question Zumwalt. Plaintiff, a passenger in the van, directed Zumwalt not to answer Agent Monsibaiz's questions and told Zumwalt they should leave the checkpoint. Agent Monsibaiz learned Zumwalt did not have a driver's license and directed Zumwalt and Plaintiff to the secondary inspection site.
 
 
 3
 As Zumwalt pulled over to the secondary inspection site, Agent Monsibaiz approached the van. Agent Monsibaiz saw a handgun in the van when Zumwalt, his son, and Plaintiff exited the van, shut and locked the doors. Agent Monsibaiz again asked Zumwalt for his driver's license. Zumwalt replied he did not have one. Agent Monsibaiz asked to see Zumwalt's handgun. The record reflects Zumwalt refused to let him see it. Aplt.App. at 72. Zumwalt and his son began to walk across the street towards the border patrol trailer. A border patrol agent told Zumwalt to go back to the van but Zumwalt refused, and said he and his son wanted to stand in the shade of the border patrol trailer. Border Patrol Agent Manuel Rodriguez contacted the Sierra County Sheriff's Department to request state police backup.
 
 
 4
 Agent Monsibaiz then asked Plaintiff for identification. The parties dispute the events that followed. According to Agent Monsibaiz, Plaintiff advanced towards him, pointed his finger within two to three inches of Agent Monsibaiz's face, yelled at him, called him a communist and "something about checkpoint Charlie." Id. at 106. Plaintiff refused to identify himself to Agent Monsibaiz. Agent Rodriguez came over and ordered Plaintiff to back off, but Plaintiff continued to argue. According to Agent Monsibaiz, Plaintiff prevented him from getting to the van when he "rushed" out of the van towards him. Agents Monsibaiz and Rodriguez stated they feared for their safety as a result of Plaintiff's conduct.
 
 
 5
 According to Plaintiff, Agent Monsibaiz approached him and asked him for identification. Thus, Plaintiff did not prevent Agent Monsibaiz from getting to the van. Moreover, Plaintiff contends he was two to three feet from Agent Monsibaiz and shook, instead of pointed, his finger at Agent Monsibaiz. Further, Plaintiff contends he did not yell at Agent Monsibaiz, but instead merely loudly asserted his constitutional rights to refuse to identify himself. Plaintiff disputes that the agents' fear was objectively reasonable. Finally, Plaintiff asserts that he backed off and did not argue anymore when told to do so by Agent Rodriguez.
 
 
 6
 At some point during the exchange, Plaintiff demanded to know if they were under arrest. Agent Monsibaiz informed Plaintiff he was not under arrest and was free to leave, but that Zumwalt needed to wait for the state policeman because he did not have a driver's license. Zumwalt, his son, and Plaintiff remained at the checkpoint.
 
 
 7
 When Defendant, who is a Sergeant with the Sierra County Sheriff's Department, arrived a few minutes later, Agent Monsibaiz took him aside and informed him that: (1) he had the individuals that had come through the checkpoint; (2) the individuals had locked the van with a weapon inside; (3) the driver of the van did not have a driver's license; (4) the individuals were uncooperative and refused to identify themselves; and (5) Plaintiff pointed his finger at Agent Monsibaiz "pretty close to his nose." Aplee. Supp.App. at 19, 24. Plaintiff does not dispute that Agent Monsibaiz informed Defendant of these facts. Aplee. Br. at 12.
 
 
 8
 Based on this information, Defendant believed Plaintiff and Zumwalt had obstructed the border patrol agents' duties. Aplt.App. at 125. Defendant began to investigate. Defendant asked Zumwalt for his driver's license. Zumwalt replied that he did not have one but produced a pilot's license. Defendant asked Plaintiff for identification. Plaintiff refused to produce any. Defendant informed Plaintiff he could be arrested under New Mexico law for concealing his identity. Plaintiff told Defendant "to radio in a tort claim," put out his hands as if to be handcuffed, and said "go ahead." Aplt.App. at 154; Aplee. Supp.App. at 5. Defendant arrested Plaintiff for concealing identity. Aplt.App. at 126. See N.M.Stat.Ann. Sec. 30-22-3 (misdemeanor offense to conceal identity "with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer" in the performance of his duties). In addition, Defendant filled out an affidavit and complaint charging Plaintiff with obstruction, see N.M.Stat.Ann. Sec. 30-22-1(D) (misdemeanor offense to resist, evade, or obstruct a peace officer in the lawful discharge of his duties), but dropped the obstruction charge on the advice of the district attorney's office. A magistrate later dismissed the concealing identity charge.
 
 
 9
 In June 1993, Plaintiff filed through counsel his second amended Sec. 1983 complaint against Defendant alleging violations of his First and Fourth Amendment rights.[1] Specifically, Plaintiff alleged Defendant had no probable cause to arrest him and that his arrest for concealing identity violated his Fourth Amendment right to be free from unlawful searches and seizures and his First Amendment right "not to speak." Aplt.App. at 155. Defendant moved for summary judgment based on qualified immunity.
 
 
 10
 The district court held a hearing on Defendant's motion in April 1994. At the hearing, Plaintiff contended his arrest for refusing to identify himself violated the First and Fourth Amendments. The district court asked Defendant to explain why there were no genuine issues of material fact with regard to these claims. Defendant attempted to set forth the undisputed facts. Plaintiff responded that he disputed many material facts, including the events of the verbal confrontation. Defendant responded that Plaintiff had not shown he violated clearly established law. Without addressing whether Plaintiff had shown Defendant violated clearly established law, the court concluded there were genuine issues of material fact with respect to Plaintiff's claims and denied Defendant's motion for summary judgment based on qualified immunity. This appeal followed.
 
 
 11
 On appeal, Defendant contends the court erred in denying his motion for summary judgment. Defendant contends he was entitled to summary judgment based on qualified immunity because Plaintiff failed to show he violated clearly established law. "We review the district court's denial of qualified immunity on summary judgment de novo." Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir.1995). " 'Under the summary judgment standard, we review the evidence in the light most favorable to the nonmoving party.' " Id. (quoting Bisbee v. Bey, 39 F.3d 1096, 1100 (10th Cir.1994)).
 
 II.
 
 12
 Qualified immunity is designed to shield public officials from liability and ensure "that erroneous suits do not even go to trial." Hinton v. City of Elwood, Kan., 997 F.2d 774, 779 (10th Cir.1993) (citing Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815; Harlow v. Fitzgerald, 457 U.S. 800, 806-08, 102 S.Ct. 2727, 2732-33, 73 L.Ed.2d 396 (1982); Pueblo Neighborhood Health Ctrs v. Losavio, 847 F.2d 642, 645 (10th Cir.1988)). Thus, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).
 
 
 13
 Once a defendant pleads qualified immunity, the plaintiff initially bears a heavy two-part burden. Hannula v. City of Lakewood, 907 F.2d 129, 130-31 (10th Cir.1990). First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Romero, 45 F.3d at 1475; see also Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' ... is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."); Hinton, 997 F.2d at 779 (plaintiff must first show the defendant's conduct violated the law). Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984). "[P]laintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." Romero, 45 F.3d at 1475. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Although the very action in question does not have to have previously been held unlawful, "in the light of pre-existing law the unlawfulness must be apparent." Id. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992).
 
 
 14
 If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity. E.g., Losavio, 847 F.2d at 646. Thus, a defendant is entitled to qualified immunity if the plaintiff fails to show a violation of a constitutional right at all. See, e.g., Romero, 45 F.3d at 1475 (defendant entitled to qualified immunity because plaintiff failed to allege facts and law demonstrating defendant arrested him without probable cause in violation of the Fourth Amendment); Bella v. Chamberlain, 24 F.3d 1251, 1255-56 (10th Cir.1994) (defendant entitled to qualified immunity because plaintiff failed to show defendant officer's act of shooting plaintiff's helicopter constituted a Fourth Amendment seizure), cert. denied, --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). Further, a defendant is entitled to qualified immunity if the plaintiff fails to show that the law was clearly established. See, e.g., Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1026 (10th Cir.1994) (defendant entitled to qualified immunity because plaintiff failed to show the law was clearly established under the Fifth Amendment that a witness may ignore police requests at the scene of an investigation for his name and address); Medina, 960 F.2d at 1498 (defendant entitled to qualified immunity because plaintiff failed to show the law was clearly established that "recklessness could give rise to liability under section 1983" and that a police officer could be liable under section 1983 for injuries caused by a fleeing suspect).
 
 
 15
 Only if the plaintiff succeeds in carrying his two-part burden, does the burden shift to the defendant. At that point, the defendant must show "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Hinton, 997 F.2d at 779. If the court concludes Plaintiff has carried his burden, the court should state on the record the clearly established constitutional right it finds the defendant violated. See Losavio, 847 F.2d at 646.
 
 III.
 
 16
 With the foregoing principles in mind, we conclude the district court did not conduct the proper inquiry. At the hearing, the court initially placed the burden on Defendant to demonstrate the absence of a genuine issue of material fact. When Defendant failed to demonstrate the absence of a genuine issue of material fact, the court denied him qualified immunity on Plaintiff's claims. However, under settled authority the court should have placed the initial burden on Plaintiff to demonstrate that Defendant violated a constitutional right that was clearly established at the time of the conduct at issue. See, e.g., Hannula, 907 F.2d at 130. If Plaintiff failed to carry either part of his two-part burden, the court should have granted summary judgment for Defendant. Losavio, 847 F.2d at 646. Moreover, if the court concluded Plaintiff had shown Defendant violated a clearly established constitutional right, the court should have specified what right was violated on the record. See id. We need not remand, however, for the court to conduct the proper inquiry. See Beard v. City of Northglenn, 24 F.3d 110, 115 (10th Cir.1994) (no remand necessary where the record was sufficient for the appellate court to resolve the qualified immunity issue). Based on the record before us, we conclude Plaintiff has failed to demonstrate Defendant violated any clearly established constitutional right.IV.
 
 
 17
 Defendant contends the district court erred by denying him qualified immunity. Specifically, Defendant maintains he is entitled to qualified immunity because Plaintiff failed to show that: (1) Defendant arrested him without probable cause in violation of the Fourth Amendment; (2) the law was clearly established that an arrest for concealing identity in the context of a lawful investigative stop violated the Fourth Amendment; and (3) the law was clearly established that Plaintiff possessed a First Amendment right to refuse to identify himself during a lawful investigative stop.
 
 A.
 
 18
 Defendant first contends he is entitled to qualified immunity because Plaintiff failed to show he arrested him without probable cause in violation of the Fourth Amendment.[2] Specifically, Defendant maintains he developed reasonable articulable suspicion to suspect Plaintiff of criminal activity based on the information relayed to him by Agent Monsibaiz, which subsequently escalated into probable cause to arrest Plaintiff during Defendant's independent investigation.
 
 
 19
 Plaintiff contends Defendant had no reasonable suspicion to believe he was involved in any criminal activity at the time he arrived at the border patrol checkpoint and did not thereafter develop reasonable suspicion or probable cause to believe he had committed a crime. Plaintiff argues Defendant had no reason to investigate when he asked Plaintiff for identification and never developed probable cause to arrest Plaintiff for concealing identity. We agree with Defendant.
 
 
 20
 "When a warrantless arrest is the subject of a Sec. 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." Romero, 45 F.3d at 1476 (quoting Hunter, 502 U.S. at 228-29, 112 S.Ct. at 537). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion, United States v. Maestas, 2 F.3d 1485, 1493 (10th Cir.1993), and to develop probable cause for an arrest. United States v. Torres, 663 F.2d 1019, 1022 (10th Cir.1981), cert. denied, 456 U.S. 973, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982).
 
 
 21
 Under New Mexico law, one commits a misdemeanor offense by concealing his identity "with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty." N.M.Stat.Ann. Sec. 30-22-3. Thus, Defendant is entitled to qualified immunity if the facts and circumstances within his knowledge would have led a reasonable officer to conclude Plaintiff concealed his identity in violation of N.M.Stat.Ann. Sec. 30-22-3. In order to carry his burden at summary judgment, therefore, Plaintiff had to establish that a reasonable officer would not have believed based on the facts and circumstances known to Defendant that he had probable cause to arrest Plaintiff for concealing identity. See Romero, 45 F.3d at 1476.
 
 
 22
 When Defendant arrived at the border patrol checkpoint, Agent Monsibaiz informed him that: (1) he had the individuals that had come through the checkpoint; (2) the individuals had locked the van with a weapon inside; (3) the driver of the van did not have a driver's license; (4) the individuals were uncooperative and refused to identify themselves; and (5) Plaintiff was pointing his finger at Agent Monsibaiz "pretty close to his nose." Aplee.Supp.App. at 19, 24. Plaintiff does not dispute that Agent Monsibaiz told Defendant these facts. Aplee. Br. at 12.
 
 
 23
 Defendant was entitled to rely on Agent Monsibaiz's undisputed representations that Plaintiff had been "uncooperative," refused to identify himself, and had pointed his finger at Agent Monsibaiz close to his nose. Maestas, 2 F.3d at 1493. From the information relayed to him by Agent Monsibaiz, Defendant could reasonably conclude Plaintiff may have: (1) obstructed the border patrol agents' duties, in violation of N.M.Stat.Ann. Sec. 30-22-1(D); (2) concealed his identity, in violation of N.M.Stat.Ann. Sec. 30-22-3; and (3) assaulted a peace officer, in violation of N.M.Stat.Ann. Sec. 30-22-21. Based on the record before us, we hold Defendant had reasonable suspicion to warrant his subsequent investigation into the potential obstruction based on the information supplied to him by Agent Monsibaiz.
 
 
 24
 Moreover, we conclude based on the record before us that Defendant reasonably could have concluded he had probable cause to arrest Plaintiff for concealing identity. Based on the information known to him, Defendant could have reasonably concluded Plaintiff concealed his identity "with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty." N.M.Stat.Ann. Sec. 30-22-3. Specifically, Plaintiff: (1) refused to identify himself to Defendant; (2) told Defendant to "radio in a tort claim" in response to Defendant's investigative efforts; (3) after being informed he could be arrested, persisted in his refusal to identify himself; and (4) held out his hands to be handcuffed and replied "go ahead." Aplt.App. at 78, 154. Thus, we hold a reasonable officer could have concluded he had probable cause to arrest Plaintiff for concealing identity in violation of N.M.Stat.Ann. Sec. 30-22-3 based on the facts and circumstances within Defendant's knowledge.[3]
 
 
 25
 In sum, Plaintiff failed to carry his burden of alleging facts that show Defendant arrested him without probable cause in violation of the Fourth Amendment. The record reflects Defendant properly developed reasonable suspicion to investigate based on the information supplied to him by Agent Monsibaiz and properly developed probable cause to arrest Plaintiff for concealing identity during the ensuing investigation. The district court erred, therefore, in shifting the burden to Defendant and in denying him qualified immunity on Plaintiff's claim of wrongful arrest without probable cause.
 
 B.
 
 26
 Defendant next argues that the law was not clearly established that Plaintiff had a Fourth Amendment right to refuse to identify himself during the course of a lawful investigative stop. We agree.
 
 
 27
 Plaintiff cites no Supreme Court or Tenth Circuit decision in support of his argument, nor have we found any in our research. Twice the Supreme Court has specifically refused to determine whether an individual can be arrested for refusing to identify himself in the context of a lawful investigatory stop. See Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979);[4] Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).[5] The issue remains unsettled. See Gainor v. Rogers, 973 F.2d 1379, 1386 n. 10, 1389 (8th Cir.1992) (majority and dissent note that the Supreme Court has not determined whether a person can be arrested for refusing to identify himself in the context of a lawful investigative stop); Tom v. Voida, 963 F.2d 952, 959 & n. 8 (7th Cir.1992) (open question in Supreme Court whether citizens can refuse to respond to questions posed during investigative stop).
 
 
 28
 The only case Plaintiff cites in support of his argument is the Ninth Circuit decision in Martinelli v. City of Beaumont, 820 F.2d 1491 (9th Cir.1987). In Martinelli, Beaumont Police Officers Van Buren, Acosta, and Augustyn approached Martinelli in a laundromat to ask her about a hit-and-run accident that occurred near the laundromat approximately two weeks earlier. The officers informed Martinelli they were investigating a hit-and-run accident and that her vehicle may have been involved. Martinelli told them she owned the vehicle in question. The officers then asked her for identification. She refused. The officers tried to persuade her to reveal her identity for thirty minutes. When she persisted in her refusal to identify herself, the officers arrested Martinelli under Sec. 148 of the California Penal Code "for delaying a lawful police investigation by refusing to identify herself." Id. at 1492.
 
 
 29
 The prosecutor eventually dismissed the charges against Martinelli. She sued the police officers and other defendants, alleging violations of her civil rights, as well as state tort claims. At trial, the district court instructed the jury that Sec. 148 of the California Penal Code was constitutional as applied by the officers in that case to arrest Martinelli. The jury returned a verdict in favor of Officers Acosta and Van Buren and the court directed a verdict for Officer Augustyn.
 
 
 30
 On appeal, the Ninth Circuit concluded the court had not adequately instructed the jury. The Ninth Circuit cited Lawson v. Kolender, 658 F.2d 1362 (9th Cir.1981), aff'd, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) to support its conclusion that "[t]he court should have instructed the jury that the use of Section 148 to arrest a person for refusing to identify herself during a lawful Terry stop violates the Fourth Amendment's proscription against unreasonable searches and seizures." Id. at 1494. As a result, the court reversed the judgments in favor of Officers Acosta and Van Buren and remanded for a new trial.
 
 
 31
 The Ninth Circuit's decision in Martinelli lends support to Plaintiff's argument. However, as we have noted, the Supreme Court has expressly refused to determine whether an individual may be arrested for refusing to identify himself in the context of a lawful investigative stop. See Brown, 443 U.S. at 53 n. 3, 99 S.Ct. at 2641; Kolender, 461 U.S. at 361 n. 10, 103 S.Ct. at 1860 n. 10. We have not ruled on the issue and both the Seventh and Eighth Circuits have indicated that the question remains open. See Gainor, 973 F.2d at 1386 n. 10, 1389; Tom, 963 F.2d at 959 & n. 8. Furthermore, we have found no other federal district or circuit court opinions that have addressed this issue. Thus, in light of the lack of certainty governing this issue, we hold Plaintiff has not demonstrated that it would have been apparent to a reasonable officer in March 1992 that arresting Plaintiff for concealing his identity in the context of a lawful investigative stop violated the Fourth Amendment. See Medina, 960 F.2d at 1498 (holding law not clearly established that recklessness can give rise to a Sec. 1983 claim because: (1) Supreme Court had expressly declined to rule on the issue; (2) Tenth Circuit had not clarified its position on the issue; and (3) only the Seventh Circuit and the Vermont District Court had ruled that recklessness can give rise to a Sec. 1983 claim). Thus, Plaintiff failed to carry his burden of showing that the law was clearly established in March 1992 that an arrest for refusing to identify one's self violates the Fourth Amendment. The district court erred, therefore, in shifting the burden to Defendant and in denying him qualified immunity on Plaintiff's claim that he has a clearly established Fourth Amendment right to refuse to identify himself to a police officer during a lawful investigative stop.
 
 C.
 
 32
 Finally, Defendant asserts Plaintiff failed to show that he has a clearly established First Amendment right to refuse to identify himself to a police officer during a lawful investigative stop. We agree.
 
 
 33
 Plaintiff cites Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) to support his contention. In Hill, Hill observed police officers confront his friend. To divert the officers' attention, Hill began to shout "[w]hy don't you pick on somebody your own size?" One officer turned to Hill and asked him if he was interrupting him in the performance of his duties. Hill responded yes. The officer arrested Hill under a Houston ordinance for " 'wilfully or intentionally interrupt[ing] a city policeman ... by verbal challenge during an investigation.' " Id. at 454, 107 S.Ct. at 2505 (quoting Houston Code of Ordinances, Sec. 34-11(a)). Hill brought a declaratory judgment action asserting the ordinance was facially unconstitutional. The Supreme Court concluded the statute was unconstitutionally overbroad on its face. The Court reasoned that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," id. at 461, 107 S.Ct. at 2509, and that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Id. at 462-63, 107 S.Ct. at 2510.
 
 
 34
 Plaintiff argues that if he has a First Amendment right to verbally oppose police officers as recognized in Hill, he possesses the First Amendment right to refuse to identify himself to police officers as well. Plaintiff bolsters his argument with a quote from Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977): "[t]he right to speak and the right to refrain from speaking are complimentary components of the broader concept of individual freedom of mind." Id. at 714, 97 S.Ct. at 1435 (quotations omitted).[6]
 
 
 35
 Plaintiff's claim fails because under existing First Amendment law a reasonable officer would not know that he violates the First Amendment by arresting a person who refuses to identify himself during a lawful investigative stop. Plaintiff has not identified any case recognizing a First Amendment right to refuse to identify one's self to a police officer during a lawful investigative stop, nor has our research disclosed any. Further, Hill does not support Plaintiff's argument. Hill recognizes that within limits a citizen may verbally oppose a police officer under the First Amendment. Hill does not recognize, nor infer, that pursuant to the First Amendment a citizen may refuse to identify himself or herself to a police officer during a lawful investigative stop. Thus, by no means does Hill clearly establish the First Amendment right Plaintiff asserts he possesses. Moreover, Plaintiff's citation to Maynard 's broad, generalized statement is equally unavailing.[7] "[P]laintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." Romero, 45 F.3d at 1475. We hold Plaintiff has failed to carry his burden of showing that it was clearly established in March 1992 that he had a First Amendment right to refuse to identify himself to a police officer during a lawful investigative stop. Thus, the district court erred in denying Defendant qualified immunity on Plaintiff's First Amendment claim.
 
 
 36
 For all of the foregoing reasons, we conclude the district court erred in denying qualified immunity to Defendant on each of Plaintiff's claims. We therefore REVERSE the district court's denial of Defendant's motion for summary judgment and REMAND with instructions to enter judgment in favor of Defendant.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Plaintiff originally filed his Sec. 1983 claim in January 1993 pro se. He sued various defendants, some of which he dropped from the suit when he filed his second amended complaint in June 1993. We are concerned in this appeal only with Plaintiff's claims against Defendant Carey
 In his second amended complaint, Plaintiff also asserted violations of his Fifth and Fourteenth Amendment rights. Plaintiff abandoned these claims at the summary judgment hearing. Moreover, on appeal, Plaintiff states in his brief that his claim is "based on the First and Fourth Amendments, not the Fifth or the Fourteenth." Aplee. Br. at 24-25.
 
 
 [2]
 Although the parties discuss this issue at the end of their briefs, we address it first
 
 
 [3]
 We therefore need not address whether a reasonable officer could have concluded, based on the information known to Defendant, that he had probable cause to arrest Plaintiff for obstruction
 
 
 [4]
 In Brown, police officers did not have reasonable suspicion to suspect Brown of criminal activity, but stopped him because he was walking away from another person in an alley in a known drug area. The officers asked Brown for his identification. When he refused to identify himself the officers arrested him under a Texas statute which made it unlawful for a person "to refuse to give his name and address to an officer 'who has lawfully stopped him and requested the information.' " 443 U.S. at 49, 99 S.Ct. at 2639 (quoting Tex.Penal Code Ann., Tit. 8, Sec. 38.02(a) (1974)). The Court concluded that "[t]he application of ... [the Texas statute] to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct." Id. at 53, 99 S.Ct. at 2641. The Court observed "[w]e need not decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements." Id. at 53 n. 3, 99 S.Ct. at 2641 n. 3
 
 
 [5]
 In Kolender, Lawson brought a declaratory judgment action asserting that a California statute, which made it a crime for a person who loitered or wandered the streets to refuse to produce "credible and reliable" identification on request of a police officer, was unconstitutional. The Ninth Circuit concluded that the statute was unconstitutional on its face because it violated the vagueness doctrine on three grounds: (1) it violated the Fourth Amendment's proscription against unreasonable searches and seizures by requiring a person to identify himself in the context of a lawful investigative stop; (2) it contained a vague enforcement standard which encouraged arbitrary and discriminatory enforcement; and (3) it failed to give fair and adequate notice of the type of conduct it prohibited. Lawson v. Kolender, 658 F.2d 1362, 1366-67 (9th Cir.1981), aff'd, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The Supreme Court affirmed on the basis that the statute was unconstitutionally vague because it encouraged arbitrary and discriminatory enforcement. 461 U.S. at 361, 103 S.Ct. at 1860. The Court expressly declined to consider the Ninth Circuit's alternative holding that the statute violated the Fourth Amendment. Id. at 361 n. 10, 103 S.Ct. at 1860 n. 10
 
 
 [6]
 Plaintiff also cites Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979), Davis v. Mississippi, 394 U.S. 721, 727, 89 S.Ct. 1394, 1397-98, 22 L.Ed.2d 676 (1969) and Terry v. Ohio, 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968) (White, J., concurring) to support his First Amendment argument. None of these cases hold one has a First Amendment right to refuse to identify oneself. Indeed, none of the three cases even deal with the First Amendment
 
 
 [7]
 Indeed, Maynard is completely inapposite. In Maynard, the Supreme Court held that New Hamshire could not punish an individual who, because of moral, political, and religious objections, covered up the motto "Live Free or Die" on his vehicle license plate. The Court stated that "[t]he First Amendment protects the right of individuals to hold a point of view different from the majority and to refuse to foster, in the way New Hampshire commands, an idea they find morally objectionable." 430 U.S. at 715, 97 S.Ct. at 1436. In the instant case, Plaintiff makes no claim that Defendant's actions forced him to adopt or espouse a viewpoint he disagreed with on moral, religious, or political grounds