**Bruce OLIVER, Plaintiff,**

v.

**James WOODS, et al., Defendants.**

**No. 1:97 CV 106 K.**

United States District Court,
D. Utah,
Central Division.

Sept. 28, 1998.

■■■

millions.

Summary Judgment, and Plaintiff Bruce Oliver's Motion for Partial Summary Judgment as to liability.

## BACKGROUND[1]

Plaintiff Bruce Oliver ("Oliver") delivered his MGB to Dave's Import Auto Shop ("Dave's") for servicing at approximately 6:45 a.m. on September 25, 1995, as prearranged with Dave's. His 17–year–old son Michael accompanied him in the family's Chrysler to take him home. Before reaching Dave's, Oliver pulled over near an intersection to wait for his son to catch up with him. As Michael arrived, both father and son saw Centerville Police Officer James Woods approach them from the opposite direction, turn around, and follow them to Dave's, where Oliver parked his MGB in front of the shop and got into the driver's seat of the waiting Chrysler.

Unbeknownst to Oliver, Dave's had been experiencing problems with illegal oil dumping. As a result, the Centerville Police Department had installed a special alarm on the premises, which signaled the Centerville Police anytime an infrared beam across the driveway was broken. Officer Woods was aware of the problems at Dave's and received notice that the alarm had been tripped at 6:45 a.m. Farmington Police Officer Dale Scow also received notice that the alarm had been tripped and, because it was standard practice for a backup officer to respond, drove toward Dave's.

As Oliver was seated in the Chrysler preparing to drive home, he was approached by Officer Woods, who asked Oliver for his name and proof of his identification. Oliver asked if he had committed a violation of the law, Officer Woods said he had not and again asked for identification. Oliver again asked if he had committed a crime, and Officer Woods again said that he had not, but that Utah law required Oliver to identify himself. Oliver said that if Officer Woods had not witnessed any criminal activity, he was going to leave. Officer Woods told Oliver that he could not leave anyway because his patrol car

Bernard L. Allen, Richards Caine & Allen, Ogden, UT, for Bruce Oliver.

Allan L. Larson, Harry H. Souvall, Snow Christensen & Martineau, Salt Lake City, UT, for James Woods, City of Centerville.

Dale J. Lambert, Karra J. Porter, Veda M. Travis, Christensen & Jensen, Salt Lake City, UT, for Dale Schow, City of Farmington.

Elizabeth King, Utah Attorney General's Office Litigation Unit, Salt Lake City, UT, for Craig R. Deardon, Utah State Department of Public Safety.

## ORDER

KIMBALL, District Judge.

Before the Court are Defendants Dale Scow and Farmington City's Motion for Summary Judgment, Defendants James Woods and Centerville City's Motion for

---

1. The usefulness of the depositions taken in this case has been undermined by certain defense counsel's excessive interruptions and unnecessary objections. Counsel are advised to review: Robert B. Sykes, *Abusive Deposition Objections and Tactics—In Search of a Standing Order*, UTAH BAR J., Aug. 1998, at 8–22.

was blocking the driveway. It was not, and Oliver left.

Officer Woods returned to his car, called for back up, and drove after Oliver. Officer Woods later testified that he saw "nothing particularly suspicious" as he approached the vehicle, but that Oliver's demeanor and desire to leave gave him reasonable suspicion to believe that "something had happened in the parking lot, that he had left oil or was there illegally." Officer Woods also testified that the particular type of alarm installed at Dave's was tripped by innocent people "all the time."

Coming from the opposite direction, Officer Scow soon encountered the caravan, and turned his car around and followed behind Officer Woods, who turned on his lights, and pulled Oliver over.

Before approaching Oliver, Officer Woods conversed briefly with Officer Scow. Officer Woods confirmed what Officer Scow had already been told by the police dispatcher—that Officer Woods had responded to an alarm and that Oliver had refused to identify himself and driven off the premises. Other than that, Officer Scow testified that he did not know what Officer Woods suspected Oliver of doing. Officer Scow did not know why the alarm had been installed at Dave's, but he knew what type of alarm it was. Officer Scow also knew that Officer Woods was new to the force. At the time, Officer Woods had been on the job for less than three months.

A video tape recording, made by a video camera in one of the patrol cars, captured the events that then transpired. The officers approached Oliver's vehicle and opened the door. They claim that they demanded that Oliver get out of the vehicle and only opened the door when he reacted too slowly, but they appear to walk directly to the car and to immediately open the door, without pausing or talking to Oliver first. Once they have opened the door, they then appear to say something to Oliver, who attempts to explain to the officers that they are violating the law. They forcibly remove him.

Once outside of the car, Oliver places his hands on his head as directed and continues to attempt to explain that they are violating the law. They demand that he drop to his knees. He immediately appears to bend forward to do so, but, apparently because his hands are on his head, pauses to gain his balance. The officers immediately force him to the ground. Utah Highway Patrol Trooper Eric McPherson then arrives on the scene.

Oliver is guided back to the patrol car. At that point, the following dialogue between Officers Woods and Scow is clearly audible:

Woods: He asked if he'd broken any crime by dropping off his vehicle and I told him no.

Scow: He didn't ... but he still has to identify himself.

Woods: What code is that?

Scow: I don't know exactly what code it is to tell you the truth.

Oliver was charged with failing to identify himself in violation of *Utah Code Ann. § 77–7–15* and interfering with arrest and was jailed. Learning that no criminal sanctions were authorized for violation of *§ 77–7–15*, the prosecutor amended the charge to violation of *Motor Vehicle Code 41a–214*, failing to display motor vehicle registration. The case was dismissed completely by Justice of the Peace Joseph Bean on Oliver's motion.

Oliver brought suit against Officers Woods and Scow and their respective police departments, alleging the following claims: (i) violation of *42 U.S.C. § 1983*, based on an unlawful search and seizure and violation of *Utah Code Ann. § 77–7–15;* (ii) assault; (iii) unlawful detention; and (iv) intentional infliction of emotional distress.

## STANDARD OF REVIEW

A motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure* is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element. "An issue of ma-

terial fact is genuine if a reasonable jury could return a verdict for the non-movant." *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995). In applying the summary judgment standard, the factual record and reasonable inferences are to be examined in the light most favorable to the non-movant.

## DISCUSSION

Key to the resolution of each of the pending motions is whether Officer Woods had reasonable suspicion to believe Oliver had committed or was in the act of committing a public offense at the time Officer Woods demanded that Oliver identify himself. This question is analyzed first, Defendants' entitlement to qualified immunity is considered next, and, finally, Oliver's individual claims are considered.

### I. Did Oliver Suffer a Constitutional Violation?

The requirements of the Fourth Amendment regarding "field interrogations" by the police are well established. Essentially, the level of suspicion required to justify the interrogation rises as the invasiveness of the interrogation rises. There are three levels.

■ First are *voluntary stops:* By merely approaching an individual on the street and asking him questions, an officer does not violate the Fourth Amendment. "The person approached, however, need not answer any questions put to him; indeed, he may decline to listen to the questions at all and go on his way." *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). Moreover, his refusal to do so does not furnish reasonable ground for further detention without more. 460 U.S. at 499, 103 S.Ct. at 1325.

■ Second are *investigative, or "Terry," stops:* Investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to a reasonable suspicion that criminal activity may be afoot. The scope of interrogation is limited to a brief stop in order to determine the identity of a suspicious individual or to maintain the status quo momentarily while obtaining more information. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The requirements of a *Terry* stop are codified in *Utah Code Ann. § 77-7-15*, which provides: "A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions."

■ Third are *arrests:* "A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime. Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995) *(internal quotation marks and citation omitted)*.

■ Centerville City argues that Officer Woods had a sufficient degree of suspicion to justify a *Terry* stop of Oliver at Dave's given the totality of circumstances, namely, that Oliver was at Dave's "well before shop hours, that Centerville had placed an alarm on the premises because of criminal activity occurring on the property, that the alarm had been triggered, and when Officer Woods approached Oliver[,] he climbed into a running car." This argument is belied by Officer Woods' own sworn testimony that he did not see anything particularly suspicious as he approached Oliver's car and that he did not suspect illegal conduct **until after** Oliver refused to identify himself.

Without saying so explicitly, Centerville City is apparently of the view that this Court is to conduct a purely theoretical inquiry into whether the circumstances would give rise to the level of suspicion necessary to warrant the stop. While it is true that the facts are to be judged against an objective standard, *see Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880, this Court will not ignore an officer's own statement that he did not *in fact* believe that suspicious circumstances existed. "[I]n justifying the intrusion, the **police officer** must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably war-

rant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880 *(emphasis added)*. In the face of Officer Woods' inability to do so, this Court declines to engage in after-the-fact rationalizations on his behalf.

Even without Officer Woods' statements, this Court could not conclude that the circumstances present on that morning gave rise to a reasonable suspicion of unlawful activity. Oliver's action in parking his vehicle in the parking lot of a repair shop before business hours is an action taken by countless law abiding citizens every day. In fact, many shops supply a key drop box to facilitate exactly that.

The cases cited by Centerville City in support of its argument to the contrary present too different circumstances to be determinative here. To support its assertion that appearance at or near the location where an alarm has been triggered can itself give rise to a reasonable suspicion of criminal activity, Centerville City relies primarily on *United States v. Doyle*, 129 F.3d 1372, 1376 (10th Cir.1997). In that case, an officer was alerted that a sensor designed to detect intrusions into the United States from Mexico had been activated. The officer estimated how long it would take a vehicle to travel from the sensor to the officer's location. When a vehicle appeared during that time frame, he followed it, noting that it was the kind of vehicle used by smugglers and that a branch was caught in its trim, consistent with passage along the brush-lined road between the sensor and the officer's location. The officer radioed in the vehicle's license number to see if it had been recorded as crossing through a port of entry legitimately and learned that it had not. The officer then determined to stop the vehicle and question its driver.

A "key factor" in the district court's finding that the circumstances gave rise to reasonable suspicion was "the highly unusual circumstance of the sensor activation coinciding with the appearance of" the car "within the exact span of time it would take a car to travel there from the location of the sensor." *Id.* at 1376. No such highly unusual circumstance is present here. Moreover, unlike intruding into the United States at a location other than an authorized checkpoint, merely pulling into a parking lot is not itself unlawful. In fact, Officer Woods testified that he knew that the type of alarm in use at Dave's was often tripped by innocent people.

■ Because Officer Woods did not have reasonable suspicion to believe that a crime might have occurred, he had no right to insist that Oliver identify himself and Oliver's refusal to do so could not have created probable cause for his arrest. *See Royer*, 460 U.S. at 498, 103 S.Ct. at 1324. In doing so, Officer Woods violated Oliver's constitutional right to be free from unlawful searches and seizures.

■ Officer Scow also violated Oliver's constitutional right to be free from unlawful searches and seizures. Officer Scow was entitled to rely on the information furnished to him by Officer Woods in determining whether the circumstances gave rise either to reasonable suspicion justifying interrogation or probable cause for an arrest. *See Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir.1995). However, the same facts that were inadequate to give rise to probable cause when known by Officer Woods do not magically give rise to probable cause when relayed to Officer Scow. Like Officer Woods, Officer Scow knew that the alarm was not a burglar alarm, but an exterior alarm that was tripped simply by breaking an infrared beam. He also knew that Officer Woods was inexperienced, yet passed up the opportunity to elicit further details from him before they approached Oliver's Chrysler.

It is apparent from the video and from statements made by the officers in their depositions that both officers are operating under the erroneous assumption that Oliver is legally obligated to identify himself regardless of the circumstances. This assumption violates not only *Utah Code Ann. § 75–7–15*, but the United States Constitution as well.

## II. Defendants' Entitlement to Qualified Immunity.

■ To ascertain whether an official is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all. This requires the court to answer the purely legal question of whether the plaintiff's allegations, if true, state a

claim for a violation of a constitutional right that was clearly established when defendant acted. *Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir.1995).

As discussed above, in asserting that the officers demanded identification from him when they did not reasonably suspect that he had committed a crime and in asserting that the officers arrested him when they did not have probable cause to believe that he had committed crime, Oliver has alleged the violation of a constitutional right that was clearly established when defendants acted.

Centerville City argues that whether Oliver had a right to refuse to identify himself during the course of a lawful investigative stop is not well established, citing *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) and *Albright v. Rodriguez,* 51 F.3d 1531 (10th Cir.1995). In *Brown,* officers approached the appellant in an alley and asked him to identify himself and explain what he was doing there. "However, the officers did not claim to suspect appellant of any specific misconduct, nor did they have any reason to believe that he was armed." 443 U.S. at 49, 99 S.Ct. at 2639. When the appellant angrily refused to identify himself and asserted the officers had no right to stop him, one officer replied that he was in a high crime area and the other frisked him, finding nothing. *Id.* When the appellant continued to refuse to identify himself, they arrested him for violation of a Texas statute nearly identical to *Utah Code Ann. § 77–7–15.*

In reversing the appellant's conviction, the Supreme Court made clear that stopping an individual for the purpose of ascertaining his identity in the absence of any basis for suspecting the individual of criminal conduct violates the Fourth Amendment. 443 U.S. at 52–53, 99 S.Ct. at 2641. *Brown* clearly establishes an individual's constitutional right to be free from exactly the kind of conduct the officers engaged in here. *Albright* stands for nothing different.

██ Plaintiff having sufficiently alleged that the officers' conduct violated clearly established law, the burden then shifts to Defendants, as movants for summary judgment, to show that no material issues of fact remain that would defeat the claim of qualified immunity. *Romero,* 45 F.3d at 1475. As ex-

plained above, Defendants cannot do so here. The uncontroverted evidence shows that Defendants' actions were without constitutional justification.

Accordingly, Defendants are not entitled to qualified immunity.

### III. Oliver's § 1983 Claim.

To satisfy the elements of a cause of action under § 1983, Oliver must establish (i) the violation of a right or the deprivation of a property interest protected by the Constitution or laws of the United States and (ii) that the deprivation was committed by defendants under color of state law. *Buckley Const., Inc. v. Shawnee Civic & Cultural Dev. Auth.,* 933 F.2d 853, 857 (10th Cir.1991). As the preceding discussion shows, the uncontroverted evidence satisfies these elements with respect to the two officers. While defense counsel have offered many legal arguments in defense of the officers' conduct, they have not directed the Court to any evidence indicating that the officers did have reasonable suspicion to believe the Oliver was engaged in criminal activity or that the officers had probable cause to believe that Oliver had committed a violation of any Utah criminal law.

██ The case is different with respect to Centerville City and Farmington City. Municipalities are subject to liability under § 1983 only for their official policies or customs, not for the unlawful acts of their employees. *Starrett v. Wadley,* 876 F.2d 808, 818 (10th Cir.1989). A claim based on a *de facto* policy of inadequate training, such as Oliver alleges here, can survive summary judgment only if the plaintiff goes beyond his pleadings and shows that he has evidence of specific facts that demonstrate that the municipality exhibited deliberate indifference toward citizens' rights, sufficient in itself to constitute a policy or custom of the city. *Medina v. City and County of Denver,* 960 F.2d 1493, 1500 (10th Cir.1992). Plaintiff made no attempt to make the required evidentiary showing. His § 1983 claims against the municipalities must be dismissed as a consequence.

Accordingly, Plaintiff is granted summary judgment with respect to liability on his § 1983 claim against Officers Woods and Scow. Plaintiff's § 1983 claim against Centerville City and Farmington City is dismissed.

## IV. Oliver's State Law Claims.

 Defendants attack Oliver's state law claims on a variety of grounds. Oliver did not respond to defendants' attacks in his memoranda. Nonetheless defendants are correct in asserting that his state law claims are barred by Utah's Governmental Immunity Act. Claims for assault are barred by *Utah Code Ann. § 63–30–10(2);* claims for unlawful detention are barred by *§ 63–30–10(10) (barring claims for "the incarceration of any person in any state prison, county or city jail, or other place of legal confinement");* and claims for intentional infliction of emotional distress are barred by *§ 63–30–10(2) (barring claims for "infliction of mental anguish").*

Accordingly, defendants' motions for summary judgment are granted with respect to Oliver's state law claims, which are dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment with respect to liability is granted on Plaintiff's § 1983 claim against Officers Woods and Scow. Defendants' motion for summary judgment is granted on Plaintiff's § 1983 claim against Centerville City and Farmington City and on Plaintiff's remaining state law claims, which are dismissed.