**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 27 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ANGEL D. GARCIA,

      Plaintiff-Appellant,

v.

JOHN SHANKS, GARY MIER,
VIRGIL GARCIA, MIKE CARRILLO,
in their official and individual
capacities,

      Defendants-Appellees.

No. 99-2293
(D.C. No. CIV-98-1149-PJK)
(D. N.M.)

ORDER AND JUDGMENT  *

Before **BALDOCK** , **McKAY** , and **BRISCOE** , Circuit Judges.

      After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal.    See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In this 42 U.S.C. § 1983 action, plaintiff Angel D. Garcia appeals the district court's grant of summary judgment on qualified immunity grounds to defendants, who served in supervisory and administrative capacities in the New Mexico Corrections Department, where Garcia was formerly employed as a corrections officer.  We affirm.

## BACKGROUND

Garcia, a Hispanic male, worked for the Corrections Department at the New Mexico Penitentiary as a Correction Officer IV.  A prerequisite for a correctional officer is that the individual shall "not have been convicted of a felony or any infamous crime in the courts of [New Mexico] or any other state or in the federal courts."  N.M. Stat. Ann. § 33-1-11(D) (Michie 1998 Repl. Pamp.).  On February 16, 1996, Garcia had a domestic dispute with his wife which resulted in his arrest.  After consultation with his attorney, he pled guilty to false imprisonment and two counts of aggravated assault against a household member with a deadly weapon–each count a fourth-degree felony.  He intended to avoid an adjudication of guilt with the entry of a conditional discharge order, followed by a successful completion of probation.    See N.M. Stat. Ann. § 31-20-13 (Michie 1994 Repl. Pamp.).    [1]  Based on advice from defendants John

---

[1]    Section 31-20-13 provides:

(continued...)

Shanks (the penitentiary warden), Gary Mier (an associate warden and Garcia's immediate supervisor), and Mike Carrillo (the personnel director for the department of corrections), Garcia believed that this procedure would allow him to keep his job.

On May 20, Garcia entered his guilty plea, allegedly in reliance on defendants' assurances. He continued to hold his position with the department. One month later, however, television and newspaper stories were published about the incident. The next day spray-painted prison graffiti calling Garcia a "women beater" was discovered. See Appellant's App. at 155, 159, 164. Garcia's supervisors transferred him to an administrative post, based on the inmates' adverse reaction.

At his sentencing hearing, held July 26, Garcia received the anticipated conditional discharge, with two years of supervised probation. Later, defendant

---

[1](...continued)

A. When a person who has not been previously convicted of a felony offense is found guilty of a crime for which a deferred or suspended sentence is authorized, the court may, without entering an adjudication of guilt, enter a conditional discharge order and place the person on probation on terms and conditions authorized by Sections 31-20-5 and 31-20-6 NMSA 1978. A conditional discharge order may only be made available once with respect to any person.

B. If the person violates any of the conditions of probation, the court may enter an adjudication of guilt and proceed as otherwise provided by law.

Virgil Garcia (the Equal Employment Opportunity officer for the department) informed plaintiff Garcia that other employees resented the fact that he had not been fired. On August 28, 1996, Shanks placed Garcia on administrative leave and sent him a Notice of Contemplated Action apprising Garcia of a proposed dismissal.

As the factual basis for that action, the notice recounted the domestic dispute, the guilty plea, the media attention, and inmates' reaction. See id. at 156-57. Shanks conceded that, in April, he had advised Garcia that a conditional discharge would have no effect on his employment, but stated that Garcia's description of the underlying incident "minimized the level of threatened violence that was disclosed by the police reports." Id. at 158. Shanks also noted that he "did not foresee . . . the publicity that followed in June and the resulting negative impact on the public, the inmates and [Garcia's] fellow employees." Id. Citing violations of the department's Code of Ethics, [2] Shanks found misconduct

_____

[2] The Code of Ethics provides, in pertinent part:

1.    Personal conduct:

      a.    Employees of the Corrections Department shall conduct themselves in a manner which reflects the highest professional ethics as an employee of the State. . . . Under no circumstances shall employees . . . act in such a way as to adversely affect the

(continued...)

-4-

that was "so serious in relation to [Garcia's] job responsibilities that [his] ability to function effectively as a correctional officer has been destroyed and [his] misconduct has adversely affected the Department's interests." Id. at 159. A pretermination hearing was held September 13; Garcia's employment was terminated on September 16.

Garcia appealed to the New Mexico State Personnel Board, alleging that the stated reason for his discharge was pretextual. At a hearing before the board, Garcia put on testimony designed to demonstrate that at least four other corrections officers had committed similar acts but were not dismissed. [3]

---

[2](...continued)

> Department or adversely affect the employee's ability to perform his/her duties. Applicable personnel shall refrain from any conduct which adversely affects the interests of the Department.
>
> . . . .
>
> c. It is a violation of the Code of Ethics to engage in any conduct which violates the civil or criminal law which adversely affects the interests of the Department of the person's ability to perform his/her duty to the department.

[3] The testimony concerning these four other officers showed:

(1) A corrections officer who described himself as part Spanish and part German received a year's probation with a deferred sentence on a charge of aggravated battery (a felony) arising from a domestic dispute and, in a

Eventually Garcia received unemployment compensation benefits but was not reinstated.   See id. at 19.

Garcia filed this suit alleging that, in discharging him, defendants had violated his rights to procedural due process, substantive due process, and equal protection.  The district court determined that defendants were entitled to qualified immunity and entered summary judgment.

## DISCUSSION

"We review the grant of summary judgment   de novo , applying the same standard as did the district court."      Chambers v. Colorado Dep't of Corrections     , 205 F.3d 1237, 1241 (10th Cir. 2000) (citations omitted); Fed. R. Civ. P. 56(c). Decisions involving a qualified immunity defense, however, are subject to a somewhat different analysis from other summary judgment rulings.      See Lighton

---

[3](...continued)
      second incident, charged with domestic violence;

      (2)  An Anglo associate warden pled guilty and received a conditional discharge for committing battery on a subordinate;

      (3)  An Anglo left a gun in a government vehicle which an inmate found and reported; and

      (4)  A Hispanic associate warden incorrectly paroled an inmate.

      Only the incident involving the fourth officer received significant media attention.  Although all of these individuals were disciplined, none were discharged.

v. University of Utah, 209 F.3d 1213, 1221 (10th Cir. 2000). "Qualified immunity is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995) (quotation omitted). When defendants base a motion for summary judgment on the defense of qualified immunity, the plaintiff must show that the defendants' actions violated a specific statutory or constitutional right, and that "the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." Id.; see also Scott v. Hern, No. 98-1320, 2000 WL 726442, *7 (10th Cir. June 6, 2000). With this standard in mind, we review each aspect of Garcia's § 1983 case.

**Procedural Due Process**

As a public employee with a property interest in continued employment, Garcia was "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before termination, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985), and a "full-blown, adversarial" hearing after the termination, Calhoun v. Gaines, 982 F.2d 1470, 1476 (10th Cir. 1992). Garcia has pointed to no procedural defects in either his pretermination hearing or his post-termination appeal to the Personnel Board. Accordingly, he has not demonstrated a violation of his procedural due process rights.

-7-

**Substantive Due Process**

Garcia next contends his substantive due process rights were violated. "Assuming a protected property interest [in this instance], 'substantive' due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis." Curtis v. Oklahoma City Pub. Schs. Bd. of Educ., 147 F.3d 1200, 1215 (10th Cir. 1998) (quotation and brackets omitted).[4]

Even Garcia admits that, at the very least, media accounts of his criminal conduct caused "embarrassment" to the department of corrections. Appellant's Br. at 13. Garcia's actions, and the aftermath of his actions, can be characterized as conduct which adversely affected the department and Garcia's ability to perform his duties, in violation of the department's code of ethics. Thus, it cannot be said that the decision to discharge him was arbitrary, capricious, or without a rational basis. Garcia's substantive due process rights were not affected by the termination of his employment.

**Equal Protection**

Garcia's final claim is based on an equal protection theory. "The Equal Protection Clause is essentially a direction that all persons similarly situated

---

[4] To implicate substantive due process, he must demonstrate the presence of a liberty or property interest to which the protections of due process attach. See Curtis, 147 F.3d at 1215. At present, the question of whether a public employee's property interest in continued employment is subject to substantive due process protections is unsettled. See id. at n.17.

should be treated alike. . . .  In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." Campbell v. Buckley, 203 F.3d 738, 747 (10th Cir. 2000) (footnotes, quotations, and ellipses omitted), petition for cert. filed, (U.S. June 15, 2000) (No. 99-2015).  Moreover, "purposeful discrimination is an essential element of an equal protection violation." Lewis v. City of Fort Collins, 903 F.2d 752, 755 n.1 (10th Cir. 1990).  "'Discriminatory purpose'" implies that a decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Personnel Adm'r v. Feeney, 442 U.S. 256, 279 (1979).

Here, Garcia has not made the requisite showing.  First, he has identified no individual of a different ethnic or racial group who was similarly situated but treated differently.  The record lacks any evidence of another correctional officer, under the supervision of these defendants, who was the subject of extensive unfavorable publicity for his role in a criminal incident and remained employed in spite of the adverse effect on his ability to relate to inmates, fellow employees, and the public.  Second, Garcia has not provided any evidence tending to show discriminatory purpose on the part of defendants.  The evidence supplied by Garcia concerning defendants' advice on the work-related effect of a conditional

discharge or statement about the dissatisfaction of other employees has no bearing on an equal protection analysis.

## CONCLUSION

In sum, Garcia has failed to demonstrate that defendants' actions violated any clearly established law or constitutional right. The district court correctly granted the defendants summary judgment on qualified immunity grounds. The decision of the district court is, therefore, AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge