**Andrea N. Sanders NICOL, Plaintiff,**

v.

**AUBURN–WASHBURN USD 437, et al., Defendants.**

**Civil Action No. 01–2117–CM.**

United States District Court, D. Kansas.

Nov. 1, 2002.

Ira Dennis Hawver, Ozawkie, KS, for Plaintiff.

M. Kathryn Webb, Richard W. James, Robin E. Kluge, McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Wichita, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This case arises out of a physical altercation between defendant Jerald F. Targett, a school security officer at Washburn Rural High School ("Washburn Rural") in Topeka, Kansas, and plaintiff Andrea N. Sanders Nicol, a student at Washburn Rural. Following the events giving rise to this action, plaintiff filed suit against defendant Auburn–Washburn Unified School District 437 ("USD 437"), several employees of Washburn Rural, and one member of the USD 437 School Board. Plaintiff named the individual defendants in both their individual capacities and official capacities as agents of defendant USD 437.

Plaintiff filed her suit under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*, claiming defendants created "a hostile education environment" that included both harassment and physical abuse and discriminated against plaintiff on the basis of her gender. Plaintiff also filed her suit under 42 U.S.C. § 1983, claiming defendants violated her rights under the Fourth Amendment to be free from unreasonable seizure, violated her rights under the Fourteenth Amendment to receive both procedural and substantive due process and to receive equal protection and "equal education," and violated her First Amendment right to freedom of speech and freedom of association.[1] In addition, plaintiff filed her suit under 42 U.S.C. § 1985(3), alleging defendants engaged in a conspiracy to deprive plaintiff of her "class-based civil rights."[2] Finally, plaintiff filed several related state law statutory and common law claims against defendants, including claims under Kan. Stat. Ann. § 60–513 "against the use of excessive force by officers," claims under Kan. Stat. Ann. § 21–3608 for child endangerment, and common law claims of intentional infliction of emotional distress, assault, and battery.

Pending before the court is defendants' Motion to Dismiss (Doc. 37). As set forth below, defendants' motion is granted in part.

● Background [3]

On the morning of September 30, 1998, at Washburn Rural, defendant Jerald Targett, a school security officer, was called to the school's commons area. In the com-

---

1. Count 2 of plaintiff's complaint also references a claim under Title VII of the Civil Rights Act of 1964. (Compl. at 8). Although defendants' motion to dismiss seeks dismissal of the complaint in its entirety, the motion does not address this claim.

2. Count 3 of plaintiff's complaint also references a claim under "Title VIII." (Compl. at 9). Although defendants' motion to dismiss seeks dismissal of the complaint in its entirety, the motion does not address this claim.

3. As prescribed by the relevant motion to dismiss standard, the court accepts as true all well-pleaded facts and views all reasonable inferences from those facts in favor of plaintiff. *Maher v. Durango Metals, Inc.*, 144 F.3d

mons area, defendant Targett encountered two female ninth grade students, including plaintiff. These female students had just been suspended from school for misbehavior. The two students left the commons area because they had been instructed to go to their various classes and pick up homework assignments to be completed during their suspension. Defendant Targett followed the two girls. The two students used obscene language and told defendant Targett to stop following them. Defendant Targett responded with obscene words and told the two girls to leave the school premises. At one point, defendant Targett followed the girls into a classroom and placed his hands on plaintiff. Officer Targett grabbed plaintiff's arm and, standing behind her, placed his forearm across her throat, shutting off her air supply. Officer Targett then swung plaintiff off the floor by her neck and dragged her into the school hallway. Defendant Targett then "drove" plaintiff's face and head into a wall, which resulted in bruises to her face. (Pl.'s Resp. at 2; Compl. at 6). He then "slammed" plaintiff into a drinking fountain. (*Id.*) Plaintiff clung to the drinking fountain to keep defendant Targett from dragging her away. Defendant Targett wrenched her away from the drinking fountain with such force to her neck that she pulled the drinking fountain off the wall. Plaintiff's knee was injured when it struck the drinking fountain.

With the assistance of another adult male security officer, defendant Targett then physically forced plaintiff into submission. Plaintiff was handcuffed, taken to Shawnee County juvenile book-in, and then released to her parents. Upon her release, plaintiff's parents took plaintiff to a hospital for treatment.

On October 5, 1998, defendant USD 437's School Board held an administrative suspension hearing. Following the hearing, plaintiff was suspended from school for the remainder of the semester. On August 2, 1999, plaintiff's parents appeared before defendant USD 437's School Board requesting an investigation into the actions of defendant Targett against plaintiff. However, in a letter dated September 13, 1999, defendant Howard Schuler, Superintendent, and defendant Stephen Angel, USD 437's School Board President, indicated that the School Board would take no action against any employee of the District for doing their job. Plaintiff alleges that defendant Targett was "generally in the community, known to have used harassment and excessive force against female minor students at his previous employment as a security officer at U.S.D. 501." (Compl. at 2).

Plaintiff alleges she was too frightened due to this altercation to return to school where defendant Targett was in a position of authority. Plaintiff alleges that she was "diagnosed with Post Traumatic Stress Syndrome and has developed a fear and hatred of authority, and of large males." (*Id.* at 7). Plaintiff also alleges that she has been impaired in the fullness of her family relationships, including those with her parents.

● **Motion to Dismiss**

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff

---

1302, 1304 (10th Cir.1998); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). Given the sparse detail of the factual allegations in plaintiff's complaint, the court has considered the facts as elaborated upon in plaintiff's response to the pending motion to dismiss. These elaborations do not modify the context or nature of plaintiff's claims. The court assumes that these additional related facts in plaintiff's response would be appropriately appended to the current complaint under a Fed.R.Civ.P. 15(a) liberal pleading standard. As such, the court considers these additional facts as those alleged by plaintiff.

can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher*, 144 F.3d at 1304, or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Swanson*, 750 F.2d at 813. The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

● **Plaintiff's Stipulation of Dismissal of Claims**

In her response to the pending motion, plaintiff noted that she "stipulates to the dismissal of her Freedom of Association, Freedom of Speech, Right to Equal Education, and Right of Equal Protection causes of action." (Pl.'s Resp. at 12). Defendants present no objection to these proposed dismissals. Accordingly, the court hereby dismisses Count 2 of plaintiff's complaint to the extent it sought a remedy for these claims. Therefore, the court finds that following plaintiff's stipulation, Count 2 remains only to the extent it alleges claims for unreasonable seizure and for procedural and substantive due process violations.

● **Qualified Immunity from Federal Civil Rights Claims**

● **Relevant Defendants**

 Defendants assert they are "immune from liability for the federal civil rights violations claimed by plaintiff by reason of the qualified immunity doctrine." (Defs.' Mot. at 4). Although all defendants have moved for dismissal on the basis of the qualified immunity defense, the court assumes that defendants' arguments regarding qualified immunity apply only to the individual defendants sued in their individual capacities and not to the school district defendant or the individual defendants sued in their official capacities. The court makes this assumption based upon the legal principle that a municipal entity, including a school district, does not "enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *see also Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (noting school districts are quasi-municipal agencies). Moreover, any claim raised against a municipal official in their official capacity is tantamount to a claim against the entity itself. In addition, relevant to the immunity analysis, defendants assert that the individually named defendants are "government officials who performed [acts] within the course of their duties" and that these defendants acted "in good faith and not in ignorance or disregard of settled indisputable principles of law." (Defs.' Mot. at 4).

**B. Qualified Immunity**

 Qualified immunity protects state actors from liability when acting within the scope of their employment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides government

officials immunity from suit as well as from liability for their discretionary acts. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 644 (10th Cir.1988). The doctrine of qualified immunity serves the goals of protecting public officials "who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

Where a defendant raises the defense of qualified immunity in the context of a motion to dismiss, the court conducts a two part inquiry. First, the court must determine whether the plaintiff has asserted a violation of a constitutional or federal statutory right. *Neiberger v. Hawkins*, 6 Fed. Appx. 683, 685–86 (10th Cir.2001). Only where the complaint alleges a valid claim must the court proceed to the next inquiry. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir.1998), *aff'd* 254 F.3d 941 (2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708,.140 L.Ed.2d 1043 (1998)); *Albright v. Rodriguez*, 51 F.3d 1531, 1534–35 (10th Cir.1995). Next, the court examines whether the right allegedly violated is " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Ordinarily, for a law to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992); *see also Anderson*, 483 U.S. at 640, 107 S.Ct. 3034 (a right is clearly established if the contours of the right are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right").

◼ The court no longer applies a heightened pleading standard in the context of a qualified immunity defense. *Currier v. Doran*, 242 F.3d 905 (10th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 543, 151 L.Ed.2d 421(2001). Our review of the qualified immunity defense raised in a motion to dismiss is limited to the pleadings. *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir.1994). In assessing the pleadings, the court construes the allegations in the complaint, and any reasonable inferences to be drawn therefrom, in favor of the petitioner. *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

The court follows this two-step test to analyze the issue of qualified immunity raised by defendants here. *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 745 (10th Cir.1999).

## ● Immunity from Civil Rights Claims Under 42 U.S.C. § 1983

Defendants assert that plaintiff has failed to state any constitutional claim under § 1983 against the individual defendants. Accordingly, defendants assert the individual defendants are qualifiedly immune from liability. In addition, defendants appear to assert that where no claim is stated against the individual defendants in their individual capacity, no liability against the school district or the individual defendants in their official capacity may be found. As such, defendants assert that all § 1983 claims against all defendants should be dismissed. The court agrees in part.

## ● Dismissed Claims

Because plaintiff has "stipulate[d] to the dismissal of her Freedom of Association, Freedom of Speech, Right to Equal Edu-

cation, and Right of Equal Protection causes of action," (Pl.'s Resp. at 12), the court finds defendants' arguments directed to these claims are moot.

● **Fourth Amendment—Unreasonable Seizure**

Defendants appear to assert that defendant Targett's attempts to restrain plaintiff do not provide a basis for a viable claim under the Fourth Amendment, and further assert that, even if they did, defendant Targett's actions did not violate any clearly established law. Plaintiff asserts that defendant Targett's attempts to restrain plaintiff unconstitutionally interrupted her "liberty of movement." (Pl.'s Resp. at 10).

● **Fourth Amendment Requirements**

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourteenth Amendment extends the constitutional guarantee against unreasonable searches and seizures "to searches and seizures by state officers . . . including public school officials." *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (internal citations omitted).

The central inquiry under the Fourth Amendment is whether a search or seizure is reasonable under all the circumstances of a particular governmental invasion of a person's personal security. *Terry v. Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To assess the reasonableness of a search or seizure, courts balance the governmental interest against the invasion which the search or seizure entails. *Vernonia Sch. Dist. 47J,* 515 U.S. at 660–61, 115 S.Ct. 2386. This balancing requires consideration of the context in which a Fourth Amendment right is asserted. In addressing the reasonableness in a public school context, the court must take into account what is appropriate treatment for children in public schools and consider a school's "custodial and tutelary responsibility for children." *See id.* at 656, 115 S.Ct. 2386. Moreover, although Fourth Amendment protections apply to public school children, students in the school environment have a "lesser expectation of privacy than members of the population generally." *Id.* at 657, 115 S.Ct. 2386 (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 348, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)).

**2. Analysis**

Here, defendants contend that defendant Targett's actions in detaining plaintiff did not violate the Fourth Amendment because his actions were directed toward ensuring that plaintiff leave the school premises to "prevent[ ] the Plaintiff from continuing to disrupt classes, and from running through the school building in an attempt to evade the security guard." (Defs.' Mot. at 16).

The central inquiry for the court is whether defendant Targett's detention of plaintiff was reasonable under all the circumstances in the public school setting. The court must examine whether, on the facts as pled by plaintiff, defendants have demonstrated as a matter of law that the plaintiff's interest in being free from seizure has been indisputably outweighed by a governmental interest. *Vernonia Sch. Dist. 47J,* 515 U.S. at 652–53, 115 S.Ct. 2386. On one side, the court must examine "the nature of the privacy interest upon which the search at issue intrudes and the character of the intrusion that is complained of." *19 Solid Waste Dept. Mechanics v. City of Albuquerque,* 156 F.3d 1068, 1072 (10th Cir.1998) (citing *Vernonia*

*Sch. Dist. 47J,* 515 U.S. at 654, 658, 115 S.Ct. 2386). On the other side, the court must consider " 'the nature and immediacy of the governmental concern at issue ... and the efficacy of [the challenged action] for meeting it.' " *Id.* (citing *Vernonia Sch. Dist. 47J,* 515 U.S. at 660, 115 S.Ct. 2386).

■ Defendants assert that plaintiff was not "detained" and that, in fact, defendant Targett's actions were intended to remove her from the school building, rather than detain her further. The court is unpersuaded by this argument. Plaintiff's complaint contains facts that, when construed in the light most favorable to plaintiff, indicate plaintiff was not able to leave the school building during the period of time she was involved in the altercation with defendant Targett.

Here, the court balances plaintiff's interest in being free from detention when departing the school's premises with the school's interest in ensuring plaintiff left the school premises following her suspension without disruption to other students. Although the school has an interest in ensuring the cooperation of students to follow school orders in a non-disruptive fashion, the court must examine the seizure in light of all the circumstances. Defendant Targett's following of plaintiff while she obtained her school assignments was likely reasonable under the circumstances. However, on the facts presented, the court questions whether the violent nature of defendant Targett's restraint of plaintiff was a reasonable manner of detaining her. Although plaintiff was engaged in combative dialogue with this school officer, the facts alleged do not indi-

cate plaintiff was physically violent toward defendant Targett. Absent this, the court finds that the manner in which plaintiff was seized may not have been a reasonable one. *See Whren v. United States,* 517 U.S. 806, 818, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (noting that the balancing of factors to determine reasonableness of seizure is appropriate where seizure is conducted in an extraordinary manner, *i.e.,* one unusually harmful to an individual's privacy or physical interests). Considering the facts alleged by plaintiff, the court finds plaintiff has stated a § 1983 for violation of her Fourth Amendment rights.[4] Defendants' motion is denied on this basis.

### ● Immunity from Suit

Having found plaintiff stated a Fourth Amendment claim, the court next examines whether the constitutional right alleged is clearly established so that reasonable school officials would have understood that their conduct violated that right. *Albright,* 51 F.3d at 1534–35. Defendants contend that defendant Targett's actions "in attempting to restrain Plaintiff were not clearly violative of well known constitutional principles." (Defs.' Mot. at 16).

■ The court finds that it has long been established that the Fourth Amendment's restriction against unreasonable seizure apply in the school context. *Vernonia Sch. Dist. 47J,* 515 U.S. at 652, 115 S.Ct. 2386. Moreover, the court finds that it has long been established that any seizure must be reasonable under all the circumstances. *Terry,* 392 U.S. at 20–21, 88 S.Ct. 1868. Under the facts alleged here, the court finds that a reasonable

---

4. The court notes that it appears from plaintiff's complaint that plaintiff's Fourth Amendment claim is alleged against the quasi-municipal defendant USD 437 and against individual defendants Jerald Targett, Stephan Angel, Howard Schuler, Perry Perkins, Bill Edwards, and David La Fevre, in both their

individual and official capacities. No argument has addressed the viability of this claim against each of the separate defendants. Accordingly, the court does not address whether the claim is properly stated against all named defendants.

officer in defendant Targett's position should have known that the use of excessive force in response to a student's non-compliant actions would violate well-known constitutional principles. Accordingly, the court finds the individual defendants against whom plaintiff's Fourth Amendment claim is alleged are not qualifiedly immune. Defendants' motion is denied on this basis.

● **Fourteenth Amendment—Procedural Due Process**

Defendants assert that plaintiff's sparse allegations fail to state a claim for violation of her rights to procedural due process. In response, plaintiff asserts that even though hearings were scheduled regarding her school suspension, these hearings were not appropriate because the "school disciplinary system went through the procedural motions without any real objective of finding the truth." (Pl.'s Resp. at 8).

● **Procedural Due Process Requirements**

A student "faced with the possibility of suspension from public school is entitled to due process." *West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1364 (10th Cir.2000). According to the Supreme Court, "students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

● **Analysis**

█ Here, plaintiff does not allege that she was denied a hearing prior to her suspension. Instead, plaintiff appears to allege as the basis for her procedural due process claim that the process provided was biased in favor of the school and

against plaintiff. In her response, plaintiff asserts that the hearings "were not held before an unbiased authority, proper notification was not given and the facts were not investigated by a neutral factfinder." (Pl.'s Resp. at 8). The court is not required to accept as true conclusory allegations in the complaint, only well-pleaded facts. *Maher*, 144 F.3d at 1304; *Swanson*, 750 F.2d at 813. The court finds that plaintiff's allegations are conclusory. Plaintiff alleges that because plaintiff received a suspension, defendant USD 437's School Board was "destined to reach a foregone conclusion that Mr. Targett was justified in his actions, and the [plaintiff] was at fault." (Pl.'s Resp. at 8). The court finds these allegations insufficient to state a procedural due process claim under the standards set forth above.

Where, as here, the court has found insufficient allegations of a claim against any individual defendant, no claim may remain against the defendant USD 437 or the individual defendants in their official capacity. This is because where there has been no unconstitutional act by an individual school official, no liability may remain for the school district. *See Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (noting a verdict in favor of a city officer requires dismissal of claim against city); *Apodaca v. Rio Arriba County Sheriff's Dep't*, 905 F.2d 1445 (10th Cir.1990) (when there is no constitutional violation, liability does not lie for failure to train or supervise). Therefore, plaintiff's claim for procedural due process violation is dismissed in its entirety.[5] Defendants' motion is granted on this basis.

● **Fourteenth Amendment—Substantive Due Process**

Defendants assert plaintiff has failed to state a substantive due process claim be-

---

**5.** Given the court's finding that plaintiff has failed to state a procedural due process claim, the court does not address the second part of the qualified immunity inquiry.

cause she has not specified which actions constitute this violation. Plaintiff has clarified in her response that her substantive due process claim arises out of her "attack[ ]" by defendant Targett, a school security guard. (Pl.'s Resp. at 8). Plaintiff characterizes the altercation between plaintiff and defendant Targett as "punishment" for her behavior the day of the altercation and contends that, under the substantive due process standards, she has sufficiently stated a claim.

## • Substantive Due Process Requirements

As set out by the Tenth Circuit, "[i]n school discipline cases, the substantive due process inquiry is 'whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Harris v. Robinson*, 273 F.3d 927, 930 (2001) (internal quotes omitted). To satisfy the "shock to conscious" standard, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir.1995).

## • Analysis

Here, considering the facts as alleged by plaintiff—plaintiff, a ninth grade female student was physically assaulted by a school security guard who was trying to escort her from the school building following her suspension. The altercation occurred after plaintiff directed obscene comments toward the security guard.[6] This altercation was of such a force that plaintiff endured physical injuries, school property was damaged, and plaintiff suffered emotional injuries. Drawing all reasonable inferences in favor of plaintiff, the court finds these allegations of fact may rise to the "shock the conscious" standard set out by the Tenth Circuit. As such, the court finds plaintiff has stated a substantive due process claim.[7]

## • Immunity from Suit

Having found plaintiff stated a substantive due process claim, the court next examines whether the constitutional right alleged is clearly established so that reasonable school officials would have understood that their conduct violated that right. *Albright*, 51 F.3d at 1534–35.

The court finds that it has long been established that the Fourteenth Amendment's substantive due process protections are implicated "where public

6. Defendants' motion indicates that on the morning of the altercation plaintiff had been "suspended from school for improper and unacceptable behavior, and had refused to peaceably leave the school building;" that plaintiff "demonstrated her 'aggressiveness' which ... led to her initial suspension; that plaintiff "provoked an unnecessary, and unplanned, altercation" with defendant Targett; and that plaintiff "continued her aggressive behavior, both verbally and physically, during Officer Targett's attempts to obtain her compliance." (Defs.' Mot. at 1–2; Defs.' Reply at 9–10). However, these "facts" are not alleged by plaintiff in her complaint, nor are they asserted by plaintiff in her Response. As

such, the court does not consider them in analyzing the pending motion to dismiss.

7. The court notes that it appears from plaintiff's complaint that plaintiff's substantive due process claim is alleged against the quasi-municipal defendant USD 437 and against individual defendants Jerald Targett, Stephan Angel, Howard Schuler, Perry Perkins, Bill Edwards, and David La Fevre, in both their individual and official capacities. No argument has addressed the viability of this claim against each of the separate defendants. Accordingly, the court does not address whether the claim is properly stated against all named defendants.

school authorities, acting under color of state law, deliberately punish a child for misconduct by restraint and infliction of appreciable physical pain." *Ingraham v. Wright*, 430 U.S. 651, 652, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Moreover, it is clearly established that "[f]reedom from bodily restraint and punishment is within the liberty interest in personal security that has historically been protected from state deprivation without due process of law." *Id.* Given this clearly established law, the court finds that, upon the facts as alleged, that a reasonable officer in defendant Targett's position should have known that the amount of force he used in response to a student's noncompliant actions would violate well-known constitutional principles. Accordingly, the court finds the individual defendants against whom plaintiff's substantive due process claim is alleged are not qualifiedly immune. Defendants' motion is denied on this basis.

- **Hostile Education Environment Claim, 20 U.S.C. § 1681(a)**

Plaintiff asserts in her response that defendant USD 437's "refusal to agree not to have [defendant] Targett have contact with [plaintiff] in the future resulted in a Hostile Educational Environment under 20 U[.]S[.]C[.] § 1681(a)." (Pl.'s Resp. at 4). Because Title IX's private right of action extends only to claims raised against the educational institution itself, the court assumes plaintiff's Title IX claim is raised only against defendants USD 437 and the individual defendants sued in their official capacities. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283–84, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (recognizing implied private right of action under Title IX); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 901 (1st Cir.1988) (noting private right of action extends only to claims against educational institution).

Defendants assert that plaintiff's complaint fails to provide a basis for any claim of a "hostile environment" or of "discrimination" of any type. (Defs.' Mot. at 6). Defendants contend plaintiff's claim under Title IX should, therefore, be dismissed. The court agrees.

- **Title IX**

Title IX provides in part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX "prohibits gender discrimination against students enrolled in federally supported educational programs and has been construed to provide an implied cause of action to an aggrieved individual." *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176–77 (10th Cir.2001).

■■■ For an educational institution to be held liable for sexual harassment occurring within the meaning of Title IX, it must be shown that the educational institution received actual notice of the harassment and responded to it with "deliberate indifference." *Gebser*, 524 U.S. at 291–92, 118 S.Ct. 1989. That is, it must be shown that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs" and that official "refuses to take action to bring the recipient into compliance" and thereby exercises "deliberate indifference" to the alleged harassment. *Id.* Institutional liability can attach, however, only if the underlying discrimination has actually occurred. *Id.* at 290–91, 118 S.Ct. 1989.

■■■ Therefore, to state a claim of school district liability under Title IX, a plaintiff must allege that the district "(1)

had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir.1999) (citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

● **Analysis**

 Considering plaintiff's complaint, the court finds that even if plaintiff had sufficiently alleged actual knowledge, deliberate indifference, and deprivation of access to the school's educational benefits, her complaint fails to allege facts sufficient to constitute element three of the prima facie case—harassment that is severe, pervasive and objectively offensive. Although plaintiff makes the generalized allegation that defendant USD 437 "fostered a hostile educational environment that discriminated against the Plaintiff . . . on the basis of her gender in violation of Title IX," (Compl. at 8), there are no factual allegations to support this conclusory statement. There are no allegations of fact that tie defendant Targett's actions to plaintiff's gender, nor are there any allegations of fact that tie the School Board's decision not to discipline defendant Targett to plaintiff's gender. Plaintiff does allege that defendant Targett was "generally in the community, known to have used harassment and excessive force against female minor students at his previous employment as a security officer at U.S.D. 501." (*Id.* at 2). However, even drawing all inferences in favor of plaintiff, the court finds that none of the factual allegations in plaintiff's complaint suggest any discriminatory motive, intent, or effect in violation of Title IX.

Accordingly, the court finds plaintiff has failed to allege a prima facie case for hostile educational environment on the basis of sex under Title IX. Defendants' motion is granted on this basis. Count 1 of plaintiff's complaint is hereby dismissed.

● **Conspiracy Claim Under 42 U.S.C. § 1985(3)**

Plaintiff contends that the "school board acted in concert with the administration of the high school, when they essentially conspired to deny plaintiff protection provided by the Constitution entitling her to procedural and substantive due process and to be secure against unreasonable seizure." (Pl.'s Resp. at 12). Defendants assert that plaintiff has failed to state a claim for conspiracy under § 1985(3). Specifically, defendants assert plaintiff's complaint alleges claims for "violation of her individual rights" under State law, rather than any class based civil right deprivation. The court agrees.

 Section 1985(3) provides a remedy when the plaintiff can show "(1) the existence of a conspiracy (2) intended to deny [her] equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir.1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Section 1985(3) requires a plaintiff to show "some . . . class-based, invidiously discriminatory animus behind the conspirator's action." *Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.1993). Therefore, to state a claim under section 1985(3), plaintiff must allege that the actions taken by defendants stem from some class-based, invidiously discriminatory animus. *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir.1994)

(absence of "class based or racial discriminatory animus" rendered allegations insufficient to state a claim under § 1985).

Here, plaintiff's 1985(3) claim, as clarified in her response, arises out of an alleged conspiracy to violate her Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and to receive procedural and substantive due process. None of these alleged wrongdoings under the Fourth and Fourteenth Amendment arises out of any alleged class based deprivation of rights. Although plaintiff's complaint does contain a claim for hostile educational environment under Title IX based on her gender, her constitutional claims that provide the basis for her § 1985(3) claim do not include an equal protection claim. In the absence of any class-based allegation of conspiracy, the court finds plaintiff's complaint fails to sufficiently allege a cause of action pursuant to § 1985(3). Defendants' motion is granted on this basis. Plaintiff's claim for conspiracy pursuant to § 1985(3) is dismissed.

● **State Statutory Claims**

In Count 4 of her complaint, plaintiff alleges violations "against the use of excessive force by officers under K.S.A. [§ ] 60–513." (Compl. at 9). In addition, in Count 5 of her complaint, plaintiff alleges violations "under state law for endangering a child" pursuant to "K.S.A. § 21–3608." (*Id.* at 10).

Defendants assert plaintiff has failed to state a claim in either Count 4 or Count 5. Plaintiff has failed to respond to defendants' arguments directed toward these two claims, and accordingly, the court deems these two claims to have been abandoned or waived by plaintiff's failure to respond. *See* D. Kan. Rule 7.4 (motion ordinarily granted when opposing party fails to respond).[8]

● **Immunity Under Discretionary Functions Exception to Kansas Tort Claims Act**

Defendants seek the court to dismiss plaintiff's state law claims by asserting they are entitled to qualified immunity from these claims pursuant to the discretionary function provision of the Kansas Tort Claims Act (KTCA), Kan. Stat. Ann. § 75–6104(e). Plaintiff brings state law claims of "intentional infliction of emotional distress, trauma of occurrence, past present and future mental suffering, degradation of family relationships and present and future residual emotional distress" (Compl. at 11); and claims of assault and battery (*Id.* at 12–13).

Defendants contend that plaintiff's Kansas common law claims should be barred because the KTCA provides defendants

---

8. Even if plaintiff had responded to the defendants' motion with respect to Counts 4 and 5, the court questions their viability under the arguments set forth by defendants. Count 4 asserts a claim related to the "use of excessive force." However, the statute cited in support of this claim does not address a claim for excessive force. Instead, Kan. Stat. Ann. § 60–513 references the statute of limitations applicable to certain state law claims. In addition, Count 5 asserts a civil claim related to child endangerment. However, the statute cited in support of this argument is criminal in nature. Kan. Stat. Ann. § 21–3608 provides that endangering a child by "intention-ally and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be injured or endangered" is a criminal offense. Kan. Stat. Ann. § 21–3608(a). It is questionable whether plaintiff, an "emancipated minor" (Compl. at 2), is protected by the cited statutory scheme. *See In re Pace,* 26 Kan.App.2d 538, 540, 989 P.2d 297, 298 (1999) (noting emancipated minor not subject to child-in-need-of-care statutory framework). Given plaintiff's failure to respond, the court does not address the viability of these claims.

immunity for the alleged improper actions. Specifically, defendants claim the KTCA shields defendants from liability on plaintiff's state law claims arising from the altercation with plaintiff on September 30, 1998, and from the subsequent hearing relating to plaintiff's school suspension.

The KTCA makes governmental entities and their employees liable for a "negligent or wrongful act or omission." Kan. Stat. Ann. § 75–6103(a). The KTCA includes various exceptions to liability, but immunity is the exception and liability is the rule. *Fettke v. City of Wichita,* 264 Kan. 629, 633, 957 P.2d 409, 412 (1998). Specific to defendants' argument, § 75–6104(e) protects governmental entities and employees acting within the scope of their employment for damages resulting from: "(e) Any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." Kan. Stat. Ann. § 75–6104(e).

 However, " '[o]nly negligent or wrongful acts or omissions of employees are excepted from liability by 75–6104, while acts or omissions involving more than the lack of ordinary care and diligence are not.' " *Moran v. State,* 267 Kan. 583, 596, 985 P.2d 127, 136 (1999) (citing *Hopkins v. State,* 237 Kan. 601, 611, 702 P.2d 311, 318–19 (1985)); *see also Barrett ex rel. Barrett v. Unified Sch. Dist. No. 259,* 32 P.3d 1156, 1166–67 (Kan.2001) (noting that the discretionary function exception under the KTCA contained in K.S.A. § 75–6104(e) provides a defense against only ordinary negligence and does not apply to allegations of willful, gross, or wanton negligence"). Therefore, "section 75–6104 exception to liability only protects negligent conduct, but not willful or wanton acts by governmental employees."

*Burgess v. West,* 817 F.Supp. 1520, 1526 (D.Kan.1993). In other words, government officials have the right to err in performing their job, but not to act in bad faith. *Beck v. Kan. Adult Auth.,* 241 Kan. 13, 19, 735 P.2d 222, 228 (1987).

 The court finds defendants are not entitled to immunity under the exceptions contained in the KTCA. Plaintiff's claims involve intentional torts and allege willful and malicious conduct by defendants. Indeed, plaintiff's common law claims do not sound in negligence. Instead, plaintiff alleges that defendants acted willfully and maliciously. Taking plaintiff's allegations of willful conduct as true, as required by the motion to dismiss standard, defendants are not entitled to immunity under the exceptions contained in the KTCA. Defendants' motion is denied on this basis.

● **Order**

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Doc. 37) is granted in part.

IT IS FURTHER ORDERED that plaintiff's claim under Count 1 of her complaint for hostile educational environment pursuant to Title IX is hereby dismissed.

IT IS FURTHER ORDERED that plaintiff's claims under Count 2 of her complaint related to freedom of association, freedom of speech, right to equal education, right of equal protection, and procedural due process are hereby dismissed.

IT IS FURTHER ORDERED that plaintiff's claim under Count 3 of her complaint for conspiracy pursuant to 42 U.S.C. § 1985(3) is hereby dismissed.

IT IS FURTHER ORDERED that plaintiff's claim under Count 4 of her complaint for violations "against the use of excessive force by officers under K.S.A.

[§ ] 60–513" (Compl. at 9) is hereby dismissed.

IT IS FURTHER ORDERED that plaintiff's claim under Count 5 of her complaint for violations "under state law for endangering a child" pursuant to "K.S.A. § 21–3608" (*Id.* at 10) is hereby dismissed.

THEREFORE, following this order of the court, plaintiff's claims remain as follows:

- Count 2: Fourth Amendment claim for unreasonable seizure;
- Count 2: Fourteenth Amendment claim for substantive due process;
- Count 2: Title VII claim;
- Count 3: Title VIII claim;
- Count 6: Claims for "intentional infliction of emotional distress, trauma of occurrence, past present and future mental suffering, degradation of family relationships and present and future residual emotional distress" (Compl. at 11);
- Count 7: Assault; and
- Count 8: Battery.

IT IS SO ORDERED. Dated this day of November 2002, at Kansas City, Kansas.

See also 231 F.Supp.2d 1092.